Follett, J.
For about six months preceding the accident complained of the plaintiff had been a shoveler on one ■of defendant’s gravel trains. About three o’clock in the afternoon of December 18, 1879, the plaintiff fell from a gravel car to the track, and one wheel of a car passed over and crushed both legs so that they were necessarily amputated. This train consisted of a locomotive, ten or twelve ■cars and a caboose, which was attached to the rear gravel car. When this train was loaded it was drawn to points on the main track where gravel was needed. Sometimes the train was unloaded without detaching cars, and at other times, when small amounts of gravel were required at different places, the cars were separated and unloaded at such places. When the cars were unloaded at different places it was the custom to drop off a car or two from the rear and leave men to unload them. The train then passed on to the next place where gravel was needed, and a car or two, depending on the quantity of gravel required at that place, left, and then the train passed on; the same process being repeated until all of the cars were left and unloaded, when the locomotive ran backwards, united the cars and returned to the gravel pit for another load.
This train and its crew (including the plaintiff) had been engaged in this service for some months. On the day of the accident the train had made several trips. At about three o’clock in the afternoon it was loaded and drawn ■south about forty rods on the main track and unloaded near the place where the train had been two or three times unloaded on the same day. When the train was in motion the shovelers stood or sat on the cars. On the occasion in question the plaintiff stood about two feet forward of the hind end of the fifth car (counting the caboose) from the rear of the train. While the train was moving the caboose and the two rear cars were cut off, and the remainder of the train moved on at about the rate of four miles per hour, and shortly the third gravel car was cut off, the car ■on which the plaintiff was standing becoming the rear car. Immediately after the third gravel car was detached the *200 plaintiff fell to the track and was run over by one of the wheels of this car. The precise cause of the plaintiff’s fall is not clearly disclosed by the evidence. In the plaintiff’s brief it is stated that the train was in motion when the cars were detached. Inferentially, this appears from the evidence. It is stated in the brief that when the third car was detached the train moved forward suddenly, which caused the plaintiff’s fall.
We are unable to find this fact clearly established by the evidence. But assuming that it is, the plaintiff claims that defendant was negligent:
First. In not estabhshing rules reqmring notice to be given before detaching cars.
Second. In not having two braxemen on this train on this trip.
The plaintiff testified than sometimes me train was un- • loaded without detaching cars, and at other times cars were detached and then unloaded. Plaintiff’s experience on this train must have taught him that in detaching cars without coming to a full stop, “slack” has to be produced by slowing the train, thus removing the pressure from the pins, and after a pin had been withdrawn and a car detached, that a forward movement of the train sufficient to draw the cars and take out the slack, would produce some “ shock ” to the cars. Whether the slack was produced by the forward movement of the train, after the caboose and two rear cars were detached, does not appear. It, however, does appear that the shock, if shock there was, causing the plaintiff’s fall, was not an unusual one. He testified: “I have seen the cars start up quickly; there was nothing unusual in the starting up, except I didn’t expect the train was going to move forward; the only trouble was. I didn’t know it was going to start; if I had known it was going to start I wouldn’t have had any trouble; I could have kept my feet if I had known about it; I didn’t see any instructions were given to the engineer to go ahead; I don’t know whether any instructions were given to him or not; I don’t know whether he started forward in consequence of orders from the foreman or conductor or whether he started of his own accord, but if he got an order to start forward there was nothing in the manner of starting that was different from the ordinary way of starting.”
Savage, called for the plaintiff, testified: “I shouted, I am going to cut this car off here, boys, look out.”
The plaintiff, when re-called, testified: That Savage did not say anything of that kind, but modified his denial on the cross-examination, by saying that he heard nothing of the kind.
The plaintiff testified that he did not see the caboose* *201 first and second gravel cars detached, but saw them after they were detached. Though standing within two feet of the rear end of his car, he did not see Savage^ stoop down, pull the pin and detach the car next following. He said that he had risen from his seat and stood, with shovel in hand, ready to begin the work of unloading at different points. It is apparent that he must have been inattentive to the operations going on around him. The business in which the plaintiff was engaged, and with which he was familiar, required care and attention on his part, and his failure to bestow it contributed to the accident, and bars a recovery.
The shock was caused by the act of a fellow servant. This is undisputed. To escape the effect of the rule, that a recovery cannot be had for the negligence of a fellow-servant, the plaintiff sought to show that defendant was negligent in not establishing a general rule governing the movements of its employees while engaged in unloading gravel trains. It is the duty of an employer engaged in a complex business, to establish rules for the protection of employees. But the business in which this plaintiff was engaged was not complex, and it is difficult to see how any rule could have given him more information than he might easily have obtained by ordinary attention to the operations in which he was engaged.
The only other ground upon which a right of action is sought to be based is that, prior to this trip, two brakemen had accompanied this train, but on this trip only one was present. The plaintiff testified that only one was present. Every other witness testified that both were present. If one was absent, it does not appear, actually or inferentially, that his presence probably might have prevented the accident. If one brakemen was absent, it does not appear that his absence was caused by the acts of the defendant, or any one standing in its place.
The defendant being entitled to a non-suit upon the evidence of the plaintiff, and there being nothing in the evidence produced by the defendant which tends to supply the defects of the plaintiff’s case, it is unnecessary to consider the rulings complained of by the plaintiff, admitting evidence in favor of defendant.
The judgment is affirmed, with costs.
Hardin, P. J., and Martin, J., concur.